JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

John Fitzgerald

**(b)** County of Residence of First Listed Plaintiff   Atlantic
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Daniel D. Orlow, Esq.
Console Mattiacci Law
1525 Locust Street, 9th Fl
Philadelphia, PA 19102

## DEFENDANTS

Glenn Insurance, Inc.

County of Residence of First Listed Defendant   Atlantic
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government
       Plaintiff
- [X] 3  Federal Question
       *(U.S. Government Not a Party)*
- [ ] 2  U.S. Government
       Defendant
- [ ] 4  Diversity
       *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                    *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [X] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [X] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - | [ ] 690 Other | [ ] 423 Withdrawal | [ ] 376 Qui Tam (31 USC |
| [ ] 130 Miller Act | [ ] 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| [ ] 140 Negotiable Instrument | Liability | [ ] 367 Health Care/ | | | [ ] 400 State Reapportionment |
| [ ] 150 Recovery of Overpayment | [ ] 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' | Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted | Liability | [ ] 368 Asbestos Personal | | [ ] 835 Patent - Abbreviated | [ ] 460 Deportation |
| Student Loans | [ ] 340 Marine | Injury Product | | New Drug Application | [ ] 470 Racketeer Influenced and |
| (Excludes Veterans) | [ ] 345 Marine Product | Liability | | [ ] 840 Trademark | Corrupt Organizations |
| [ ] 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | [ ] 880 Defend Trade Secrets | [ ] 480 Consumer Credit |
| of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards | Act of 2016 | (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle | [ ] 371 Truth in Lending | Act | | [ ] 485 Telephone Consumer |
| [ ] 190 Other Contract | Product Liability | [ ] 380 Other Personal | [ ] 720 Labor/Management | **SOCIAL SECURITY** | Protection Act |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal | Property Damage | Relations | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | Injury | [ ] 385 Property Damage | [ ] 740 Railway Labor Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ |
| | [ ] 362 Personal Injury - | Product Liability | [ ] 751 Family and Medical | [ ] 863 DIWC/DIWW (405(g)) | Exchange |
| | Medical Malpractice | | Leave Act | [ ] 864 SSID Title XVI | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | [ ] 791 Employee Retirement | | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | Income Security Act | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information |
| [ ] 230 Rent Lease & Ejectment | [X] 442 Employment | [ ] 510 Motions to Vacate | | [ ] 870 Taxes (U.S. Plaintiff | Act |
| [ ] 240 Torts to Land | [ ] 443 Housing/ | Sentence | | or Defendant) | [ ] 896 Arbitration |
| [ ] 245 Tort Product Liability | Accommodations | [ ] 530 General | | [ ] 871 IRS—Third Party | [ ] 899 Administrative Procedure |
| [ ] 290 All Other Real Property | [ ] 445 Amer. w/Disabilities - | [ ] 535 Death Penalty | **IMMIGRATION** | 26 USC 7609 | Act/Review or Appeal of |
| | Employment | **Other:** | [ ] 462 Naturalization Application | | Agency Decision |
| | [ ] 446 Amer. w/Disabilities - | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration | | [ ] 950 Constitutionality of |
| | Other | [ ] 550 Civil Rights | Actions | | State Statutes |
| | [ ] 448 Education | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1  Original
       Proceeding
- [ ] 2  Removed from
       State Court
- [ ] 3  Remanded from
       Appellate Court
- [ ] 4  Reinstated or
       Reopened
- [ ] 5  Transferred from
       Another District
       *(specify)*
- [ ] 6  Multidistrict
       Litigation -
       Transfer
- [ ] 8  Multidistrict
       Litigation -
       Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. §12101, et seq; 29 U.S.C. § 2601, et seq
Brief description of cause:
Plaintiff was discriminated against because of his disability and his request for medical leave.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
in excess of $75,000

CHECK YES only if demanded in complaint:

JURY DEMAND:   [X] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE 10/23/2020

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ———————————————————— : | | |
| | : | |
| **JOHN FITZGERALD** | : | |
| **Northfield, NJ** | : | **Civil Action No.** |
| | : | |
| Plaintiff | : | |
| v. | : | |
| | : | |
| **GLENN INSURANCE, INC.** | : | |
| **Absecon, NJ** | : | |
| | : | |
| Defendants | : | |
| | : | |
| ———————————————————— : | | |

## CIVIL ACTION COMPLAINT

### I.   INTRODUCTION

Plaintiff, John Fitzgerald, brings this action against his former employer, Glenn Insurance, Inc. ("Defendant"), for violations of the Americans with Disabilities Act, as amended, 42 U.S.C. §12101, *et seq*. ("ADA"), the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq*. ("FMLA"), and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, et seq.  ("LAD").

In January 2019, Plaintiff was diagnosed with an aggressive and high-grade form of bladder cancer.  Plaintiff disclosed his diagnosis to his immediate supervisor, Thomas Glenn, III (Defendant's Owner and President), and disclosed his need for periodic accommodations, which included working from home on certain occasions and attending medical appointments as needed. Plaintiff was immediately reprimanded for "interrupting" Glenn with news of his diagnosis. Thereafter, Plaintiff had certain job duties taken away from him, was removed from a committee that he sat on, and was excluded from Defendant's strategic planning discussions.  Plaintiff was ultimately terminated under the false premise that his job was being eliminated.

Defendant discriminated against Plaintiff because of his disability, retaliated against him for seeking reasonable accommodations and protected medical leave, and subjected Plaintiff to a hostile work environment because of his disability.  Plaintiff seeks damages, including back-pay, front-pay, compensatory, punitive,  attorneys' fees and costs, and all other relief that this Court deems appropriate.

## II.     PARTIES

1.     Plaintiff John Fitzgerald is an individual and citizen of the State of New Jersey, residing therein in Northfield, NJ.

2.     Defendant Glenn Insurance, Inc. is a New Jersey corporation with a principal place of business located at 500 E. Absecon Blvd. Absecon, NJ 08201.

3.     At all times material hereto, Plaintiff was an employee of Defendant within the meaning of the statutes which form the basis of this matter.

4.     At all times material hereto, Defendant was an employer of Plaintiff within the meaning of the statutes which form the basis of this matter.

5.     At all times material hereto, Defendant employed more than fifteen (15) people.

6.     At all times material hereto, Defendant acted by and through its authorized agents, servants, workmen, and/or employees within the course and scope of their employment with Defendant and in furtherance of Defendant's business.

## III.    JURISDICTION AND VENUE

7.     The causes of action set forth in this Complaint arise under the ADA, the FMLA and the LAD.

8.     The District Court has subject matter jurisdiction over Count I (ADA) and Count II (FMLA) pursuant to 28 U.S.C. § 1331.

9.     The District Court has supplemental jurisdiction over Count III (LAD) pursuant to 28 U.S.C. § 1367.

10.    Venue is proper under 28 U.S.C. § 1391(b).

11.    On or about December 17, 2019, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC), complaining of the various acts of discrimination and retaliation set forth herein.  Attached hereto, incorporated herein, and marked as Exhibit "A" is a true and correct copy of the December 17, 2019 Charge of Discrimination filed with the EEOC (with minor redactions for purposes of electronic filing of confidential/identifying information).

12.    On or about July 28, 2020 the EEEOC issued Plaintiff a Notice of Dismissal and Right to Sue, informing him that he had the right to bring suit in either Federal or State Court within ninety (90) days of his receipt of the Right to Sue Notice.  Attached hereto, incorporated herein, and marked as Exhibit "B" is a true and correct copy of the July 28, 2020 Notice of Right to Sue from the EEOC.

13.    Plaintiff has complied with all administrative pre-requisites for the commencement of this action.

## IV.    <u>FACTUAL ALLEGALTIONS</u>

14.    Plaintiff began working for Defendant on or about October 1, 2018.

15.    Plaintiff held the position of Sales and Underwriting Manager and reported to Thomas L. Glenn III ("Glenn"), President and Owner.

16.    Plaintiff consistently demonstrated positive performance and dedication to Defendant.  At all relevant times, Plaintiff performed his job duties and responsibilities in a highly competent manner and received positive feedback on his performance.

17.     On January 17, 2019, Plaintiff was diagnosed with bladder cancer.

18.     At all relevant times, Plaintiff was a qualified individual with a disability within the meaning of the ADA and LAD.

19.     At all relevant times, Plaintiff's bladder cancer qualified as a "serious health condition" within the meaning of the FMLA.

20.     Plaintiff was able to perform the essential functions of his job with or without reasonable accommodations.  Examples of the reasonable accommodations that allowed Plaintiff to perform the essential functions of his job included working from home to recover from surgery and periodically taking days off to attend medical appointments related to his cancer.

21.     At all relevant times, Plaintiff's bladder cancer substantially impacted his ability to engage in major life activities over a prolonged period of time including, without limitation:

      a.   the ability to properly urinate;

      b.   the ability to properly hold urine;

      c.   the ability to maintain a regular sex life;

      d.   the ability to maintain a normal exercise routine;

      e.   the ability to travel for prolonged period without access to a restroom;

22.     Plaintiff's bladder cancer also substantially impacted the normal growth of cells in his bladder.

23.     On February 7, 2019, Plaintiff underwent a cystoscopy to determine if he had any tumors located in his bladder.  The cystoscopy revealed that Plaintiff had five (5) tumors in his bladder, which were removed that day.

24.     In a follow up appointment with his doctor on February 17, 2019, Plaintiff was informed that his cancer was "aggressive" and "high-grade."

25.     Plaintiff's cancer diagnosis was classified as "aggressive" and "high-grade" due to its propensity to re-occur.

26.     Plaintiff's high-grade bladder cancer will require him to be routinely monitored for the rest of his life through testing, surgical procedures, CAT scans, and MRIs.

27.     Following his February 17, 2019 appointment, Plaintiff called Glenn to inform him of his diagnosis and medical condition.

28.     In a meeting with Glenn two days later on February 19, 2019, Plaintiff was berated for having called Glenn to inform him of the diagnosis.   Glenn stated that Plaintiff had interrupted him and asked Plaintiff, in an indignant and frustrated tone of voice, what he was "supposed to do" with the information Plaintiff had provided to him.  During the same meeting, Glenn accused Plaintiff of treating him like "a medical concierge."

29.     During the same meeting, Glenn also told Plaintiff to call Gilda's Club (a cancer support group located in New Jersey) and that he didn't want to be bothered trying to help Plaintiff. Plaintiff understood Glenn's comment to be sarcastic, insincere, and discriminatory on account of his disability.

30.     On March 21, 2019, Plaintiff underwent surgery to remove tissue surrounding the areas in his bladder from which the tumors had previously been removed.  This procedure involved a re-building of the bladder.

31.     Later that day, in a conversation with Glenn, Plaintiff requested the accommodation of working from home for the next several days, as he recovered from surgery.  Glenn reluctantly approved Plaintiff's request, but stated that he did not want to be taken advantage of.

32.     On March 27, 2019, Plaintiff returned to work at the office.

33.     Following the disclosure of his disability and return to the office, Plaintiff was

treated differently, and worse, than nondisabled employees and/or employees who had not sought reasonable accommodations or medical leave for a disability.  By way of example:

    a.  Glenn instructed Plaintiff not to conduct certain training sessions that were part of his job duties, and assigned those training sessions to Kandy Kruse, Information Technology Manager.  Kruse does not have a disability.

    b.  Glenn excluded Plaintiff from lunches and strategic planning discussions, which Plaintiff had been invited to before the disclosure of his diagnosis.

    c.  On one particular occasion, Glenn refused to acknowledge Plaintiff's presence in a meeting.

    d.  On various occasions, Glenn repeatedly ignored Plaintiff's requests for assistance.

34.    Between April 17, 2019 and May 15, 2019, Plaintiff underwent a series of six (6) chemotherapy treatments.

35.    Defendant was aware that Plaintiff was being treated for his disability during this time period.

36.    In or about June 2019, in a meeting with Glenn, Plaintiff was told that he was no longer a member of the Standing Automation ("Epic") Committee.  Defendant's Epic Committee was geared towards optimizing the efficiency of Defendant's business practices and protocols.

37.    Glenn's stated reason for this decision was that Plaintiff did not have the knowledge to meaningfully contribute to the Committee.  This was false.  Plaintiff had more than adequate knowledge to meaningfully contribute to Defendant's Epic Committee.  By way of example, and without limitation, Plaintiff had developed training protocols for use by Defendant's sales staff and underwriters and had also worked with third-party consultants to assess Defendant's

workflows and efficiencies.

38.     On June 24, 2019, Plaintiff underwent a cystoscopy to determine if cancerous tumors had resurfaced.

39.     On July 2, 2019, as a result of the June 24, 2019 cystoscopy, Plaintiff underwent a second surgery to remove  tissue surrounding the areas from which the tumors had been previously removed, necessitating a second bladder reconstruction at this time.

40.     In July 2019, Michael Thomas ("Thomas"), Executive Vice President, and a direct report to Glenn, told Plaintiff that Glenn had been interviewing a potential candidate, John Appel, to replace Plaintiff.

41.     Thomas told Plaintiff that Appel was, on multiple occasions, brought into the office and introduced to Plaintiff's direct reports.  Thomas told Plaintiff that Glenn planned to terminate Plaintiff's employment if he ended up hiring Appel.

42.     On August 15, 2019, in an email from Henry Wimberg, Vice President and Treasurer, to all employees, Wimberg stated that "[t]here was a discussion at a recent management meeting about employees working from home so [Defendant was] sending this email to review [Defendant's] company policy."   Wimberg stated the following: Defendant "requires all employees to work from one of [Defendant's] office locations . . . . If you are not able to be in the office due to illness, family matters or other reasons, you will be required to use PTO or an authorized leave of absence for that time out of the office.  Exceptions to this policy may be made for certain unusual or unique circumstances but only with Executive Management Team approval in advance of the dates for which you will be out of the office."

43.     In the month of September 2019, Defendant did not give Plaintiff a performance review, or a salary increase.  However, non-disabled employees and/or employees who had not

sought reasonable accommodations for a disability had received performance reviews and salary increases.

44.     On September 23, 2019, in an email to Wimberg, Plaintiff stated that he was having surgery on October 2, 2019, and did not know whether he would "need to request a work from home accommodation" for October 3 and 4, 2019.  Plaintiff explained that his need to work from home on those days would depend on how the surgery went and that, per the requirements of Wimberg's August 15, 2019 email, Plaintiff was "advising [him] of this potential need in advance."

45.     Plaintiff received no response to this email communication.

46.     On October 2, 2019, Plaintiff underwent another cystoscopy to determine if cancerous tumors had resurfaced.

47.     On October 3, 2019, Plaintiff called and left a voice message for Glenn, informing him that he would need to work from home that day and the next day, as he was recovering from a surgery.   Plaintiff provided Glenn and Wimberg with a surgeon's note, stating that he needed to work from home that day and the next day, and that he would be able to return to the office on October 7, 2019.

48.     Plaintiff also called Thomas, Connie Gillen (Receptionist), and Neal Bellinger, Commercial Underwriter, to inform them that he would be working from home that day and the next day.

49.     That same day (October 3, 2019) Wimberg asked Plaintiff if he had received approval from Glenn to work from home.

50.     In doing so, Wimberg specifically instructed Plaintiff not to put "work from home" on the office calendar.

51.     In response, Plaintiff forwarded Wimberg the email that Plaintiff had sent on September 23, 2019, and reiterated that he had not known in advance whether he would need to work from home following his surgery.  Plaintiff specifically explained that the surgeons had decided the previous day, on October 2, 2019, that they needed to put him under general anesthesia due to the particulars of his case and his prior history and complications.  Plaintiff further explained that he had complied to the best of his ability to meet the requirements outlined in Wimberg's 8/15/19 e-mail to let management know in advance of any need to work from home

52.     Wimberg responded to Plaintiff and stated that Glenn had approved Plaintiff working from home that day (October 3, 2019) and the next day.  Wimberg specifically stated that, "[i]n the future, this will need to be approved prior to the dates [Plaintiff was] out of the office."

53.     Kruse and Thomas, both nondisabled employees, regularly worked from home.

54.     On October 7, 2019, Plaintiff returned to work at the office.

55.     On October 15, 2019, in an email to Wimberg and Glenn, Plaintiff requested time off on November 4, 2019 and November 14, 2019 for reasons connected to his disability.

56.     On October 17, 2019, in a meeting with Glenn, Plaintiff requested to be reinstated on the Standing Automation ("Epic") Committee.  Glenn refused to reinstate Plaintiff.

57.     On October 29, 2019, in a meeting with Glenn, Plaintiff reiterated that he would be undergoing a medical procedure on November 4, 2019, and that he may need to work from home on November 5, 2019.

58.     Glenn approved Plaintiff's work from home request for November 5, 2019.

59.     Subsequently, Plaintiff informed Wimberg and Glenn that there was a possibility that he would need the full day off on November 4, 2019, and explained that he had previously discussed with Glenn the need to work from home on November 5, 2019.

60.     On November 4, 2019, Plaintiff underwent a biopsy of sixteen (16) sites of his prostate.

61.     On November 5, 2019, Plaintiff provided a surgeon's note to Wimberg and Glenn which stated that Plaintiff needed to work from home that day and that he would be returning to work at the office on November 6, 2019.

62.     On November 6, 2019, Plaintiff returned to work at the office.

63.     On November 13, 2019, in a meeting with Wimberg, Plaintiff was told that he had not communicated his work from home requests properly, and that Glenn had not approved Plaintiff November 5, 2019 work from home day.  This was false.

64.     Wimberg further stated that, because Glenn did not respond in writing to Plaintiff's email regarding the need to work from home on November 5, Plaintiff was considered to have violated company policy by working from home that day.  Wimberg stated that working from home would only be acceptable, if approved, for a period of two (2) or three (3) consecutive weeks at a time and reiterated that Defendant did not want employees working from home.

65.     In response, Plaintiff asked Wimberg if there would be further consideration for his situation, as he had a life-threatening illness.  Wimberg said no.  When Plaintiff asked for the opportunity to provide further information that may be helpful, Wimberg responded that he was not interested in the details.

66.     In a meeting with Thomas that same day, following the above meeting with Wimberg, Plaintiff was told that Glenn still wanted to terminate him, and had been wanting to fire him for months.  Thomas told Plaintiff that he believed his termination was inevitable, that it would only be a matter of time, and that there was nothing Plaintiff could do to improve his standing at Defendant.

67.     The following day, on November 14, 2019, Plaintiff underwent a series of tests and invasive procedures and had a follow up consultation with his surgeon.

68.     On November 19, 2019, Plaintiff requested, and was approved for, one and a half (1.5) days of paid time off for an appointment with his surgeon on December 12, 2019 and a cystoscopy and a urolift on January 14, 2020.

69.     Two days later, on November 21, 2019, in a meeting with Glenn and Wimberg, Defendant informed Plaintiff that his employment was being be terminated, effective November 22, 2019.  The stated reason for Plaintiff's termination was that his job was being eliminated. Plaintiff was told that his work would be spread out to other employees.

70.     Defendant terminated Plaintiff's employment because of his disability and/or Plaintiff seeking reasonable accommodations for his disability.

71.     As of October 1, 2019, Plaintiff's requests to take days off to attend medical appointments qualified for protection under the FMLA.

72.     Before Plaintiff informed Defendant of his disability and sought reasonable accommodations for the same, Plaintiff had no indication that his job was in jeopardy.

73.     Plaintiff had no performance or disciplinary issues throughout his employment and was given no option or opportunity to remain employed with Defendant.

74.     Following his termination, Defendant assigned Plaintiff's job duties and responsibilities to non-disabled employees and/or employees who had not sought reasonable accommodations for a disability.  Plaintiff was more qualified and experienced to perform his job duties than the employees to whom his job duties were assigned.

75.     Defendant subjected Plaintiff to a hostile work environment because of his disability and/or seeking reasonable accommodations for his disability.

76.     Plaintiff's disability, his requests to periodically work from home as needed, and his requests to periodically take days off to recover from surgery related to his disability, were each motivating and/or determinative factors in Defendant's discriminatory and retaliatory treatment of him, including the hostile work environment to which he was subjected and the termination of his employment.

77.     The discriminatory and retaliatory conduct of Defendant, as alleged herein, was severe and/or pervasive enough to make a reasonable person believe that the conditions of employment had been altered and that a hostile work environment existed, and made Plaintiff believe that the conditions of employment had been altered and that a hostile work environment existed, because of his disability and his requests for accommodations.

78.     As a direct and proximate result of the discriminatory conduct of Defendant, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

## COUNT I – Americans with Disabilities Act

79.     Plaintiff incorporates herein by reference the paragraphs set forth above as if set forth herein in their entirety.

80.     By committing the foregoing acts of discrimination and retaliation, including subjecting Plaintiff to a hostile work environment and terminating his employment, Defendant has violated the ADA.

81.     Defendant further violated the ADA by failing to provide Plaintiff with reasonable accommodations for his disability, including working from home and taking days off to attend medical appointments related to his disability.

82.     Defendant acted with malice and/or reckless indifference toward the federally protected rights of Plaintiff and its conduct warrants the imposition of punitive damages.

83.     As a direct and proximate result of Defendant's violation of the ADA, Plaintiff has sustained the injuries, damages, and losses set forth herein and has incurred attorneys' fees and costs.

84.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory, retaliatory, and unlawful acts unless and until the Court grants the relief requested herein.

85.     No previous application has been made for the relief requested herein.

## COUNT II – FMLA

86.     Plaintiff incorporates herein by reference the above paragraphs as if set forth herein in their entirety.

87.     At all relevant times, Defendant employed more than fifty (50) people within a seventy-five (75) mile radius of Plaintiff's workplaces.

88.     Plaintiff had worked for Defendant for at least 1,250 hours in the twelve months period preceding October 1, 2019.

89.     At all relevant times, Plaintiff suffered from a "serious health condition" within the meaning of the FMLA.

90.     At the time of Plaintiff's termination, Plaintiff was eligible for leave under the FMLA.

91.     At all relevant times, Defendant was subject to the requirements of the FMLA.

92.     By committing the foregoing acts of discrimination and retaliation against Plaintiff, including terminating his employment, Defendant violated the interference anti-retaliation provisions of FMLA.

93.     Plaintiff's exercise of his FMLA rights was considered as a negative factor, and was a motivating and determinative factor in Defendant's conduct towards Plaintiff, including terminating his employment.

94.     By its actions set forth herein, Defendant interfered with Plaintiff's right to FMLA-protected medical leave.

95.     Said violations were not in good faith, and Defendant did not have reasonable grounds to believe that the foregoing acts were not in violation of the FMLA. Defendant's violations of the FMLA warrant the imposition of liquidated damages.

96.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory, retaliatory, and unlawful acts unless and until the Court grants the relief requested herein.

97.     No previous application has been made for the relief requested herein.

## COUNT III – LAD

98.     Plaintiff incorporates herein by reference the paragraphs set forth above as if set forth herein in their entirety.

99.     By committing the foregoing acts of discrimination and retaliation, including subjecting Plaintiff to a hostile work environment and terminating his employment, Defendant has violated the LAD.

100.    Defendant further violated the LAD by failing to provide Plaintiff with reasonable accommodations for his disability, including working from home and taking days off to attend medical appointments related to his disability.

101.    As a direct and proximate result of Defendant's violation of the LAD, Plaintiff has sustained the injuries, damages and losses set forth herein and has incurred attorneys' fees and costs.

102.    Members of Defendant's upper management were directly involved in and/or willfully indifferent to the discrimination and retaliation set forth herein, including the hostile work environment, to which Plaintiff was subjected, and its conduct was especially egregious, thus warranting the imposition of punitive damages.

103.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and unlawful acts unless and until the Court grants the relief requested herein.

104.    No previous application has been made for the relief requested herein.

## RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff, John Fitzgerald, and against Defendant:

a)      declaring the acts and practices complained of herein to be in violation of ADA;

b)      declaring the acts and practices complained of herein to be in violation of the FMLA;

c)      declaring the acts and practices complained of herein to be in violation of the LAD;

d)      enjoining and restraining permanently the violations alleged herein;

e)      awarding damages to Plaintiff for the past and future economic losses that he has

suffered;

       f)       awarding compensatory damages to Plaintiff for past and future emotional upset,

mental anguish, humiliation, loss of life's pleasures, and pain and suffering;

       g)      awarding punitive damages to Plaintiff;

       h)      awarding Plaintiff the costs of this action, together with reasonable attorney's fees;

       i)       granting such other and further relief as this Court deems appropriate.


                                    **CONSOLE MATTIACCI LAW, LLC**


Dated:  October 23, 2020       BY:   _____
                                    Daniel S. Orlow, Esq.
                                    110 Marter Avenue, Suite 502
                                    Moorestown, NJ 08057
                                    (215) 545-7676
                                    Attorneys for Plaintiff, John Fitzgerald.

Exhibit "A"

| CHARGE OF DISCRIMINATION | | AGENCY | CHARGE NUMBER |
|---|---|---|---|
| This form is affected by the Privacy Act of 1974; See privacy statement before consolidating this form. | | ○ FEPA<br>X EEOC | |

| STATE OR LOCAL AGENCY: | | |
|---|---|---|

| NAME (Indicate **Mr.**, Ms., Mrs.)<br>**John Fitzgerald** | HOME TELEPHONE NUMBER *(Include Area Code)* |
|---|---|

| STREET ADDRESS | CITY, STATE AND ZIP<br>Northfield, NJ 08225 | DATE OF BIRTH |
|---|---|---|

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP, COMMITTEE, STATE OF LOCAL GOVERNMENT WHO DISCRIMINATED AGAINST ME (If more than one than list below)

| NAME<br>**Glenn Insurance, Inc.** | NUMBER OF EMPLOYEES, MEMBERS<br>> 20 | TELEPHONE (Include Area Code)<br>(609) 641-3000 |
|---|---|---|

| STREET ADDRESS<br>500 East Absecon Boulevard, PO Box 365 | CITY, STATE AND ZIP<br>Absecon, NJ 08201-0365 | COUNTY<br>Atlantic |
|---|---|---|

| CAUSE OF DISCRIMINATION *(Check appropriate box(es))*<br>○ Race  ○ Color  ○ Sex  ○ Religion  ○ National Origin<br>**X** Retaliation  ○ Age  **X** Disability  ○ Other *(Specify)* | DATE DISCRIMINATION TOOK PLACE<br><br>*Earliest*        *Latest*  11/22/2019 |
|---|---|

**The Particulars Are:**

A.    1.    Relevant Work History

I began working at Respondent on or about October 1, 2018. I held the position of Sales and Underwriting Manager. I reported to Thomas ("Tim") L. Glenn III, President and Owner.

Respondent terminated my employment on November 22, 2019. When Respondent terminated my employment, Respondent was aware of my disability, aware that I requested time off for my disability, and aware that I had sought reasonable accommodations for my disability. Respondent terminated my employment and subjected me to a hostile work environment because of my disability, my seeking reasonable accommodations for my disability, including working from home, and for taking time off of work for my disability. Respondent retained nondisabled[a] employees in positions for which I was more qualified to perform when I was terminated.

I consistently demonstrated positive performance and dedication to Respondent. I performed my job duties and responsibilities in a highly competent manner.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures | NOTARY - (when necessary for State and Local Requirements) |
|---|---|
| | I swear of affirm that I have read the above charge and that it is true to the best of my knowledge information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | |

| Date: 12/17/19   Charging Party (*Signature*):<br><br>*John Fitzgerald* | SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(Day Month, and year) |
|---|---|

[a] References herein to a person not having a disability are all to the best of my knowledge.

EEOC Charge of Discrimination
Page 2 of 6
Initials of Charging Party – *J.J.*

2.    Harm Summary

I have been discriminated against because of my disability (including history of and regarded as) and retaliated against because of my seeking reasonable accommodations for my disability. Evidence of the discriminatory and retaliatory conduct to which I have been subjected includes, but is not limited to, the following:

(a) On or about December 8, 2019, I received a bonus, and had received positive performance feedback.

(b) On January 17, 2019, I was diagnosed with bladder cancer.

(c) On February 7, 2019, I underwent a cystoscopy to determine if I had any tumors.  I had five (5) tumors discovered and removed.

(d) On February 17, 2019, my doctor told me that my cancer was "aggressive" and "high-grade."

(e) On February 17, 2019, following my doctor's appointment and surgery, I called Glenn to inform him of my diagnosis and medical condition.

(f) On February 19, 2019, in a meeting with Glenn, he berated me for calling him.  He stated that I had interrupted him, and he asked me what he was supposed to do with the information I told him.  He accused me of treating him like "a medical concierge."

(g) On March 21, 2019, I underwent surgery to remove tissue surrounding the areas from which my tumors were removed.

(h) On March 21, 2019, in a conversation with Glenn, I requested the accommodation of working from home for the next several days, as I recovered from surgery.  Glenn approved my request but stated that he that he did not want to be taken advantage of.

(i) On March 27, 2019, I returned to work at the office.

(j) Respondent treated me differently, and worse, than nondisabled employees and/or employees who had not sought reasonable accommodations for a disability.

(k) Glenn instructed me not to conduct certain training sessions that were part of my job duties, and assigned the training session to Kandy Kruse, Information Technology Manager, to conduct.  Kruse does not have a disability.

(l) I was precluded from conducting certain training sessions because of my disability and/or my seeking reasonable accommodations for my disability.

(m) After I was diagnosed with bladder cancer, Glenn excluded me from lunches and strategic planning discussions, which I was invited to before I was diagnosed.

(n) Glenn refused to acknowledge my presence in a meeting.

(o) I was repeatedly ignored and my requests for assistance were refused.

EEOC Charge of Discrimination
Page 3 of 6
Initials of Charging Party –

(p) Between April 17, 2019 and May 15, 2019, I underwent a series of six (6) immunotherapy treatments. Respondent was aware that I was being treated for my disability.

(q) In or about June 2019, in a meeting with Glenn, he told me that I was no longer a member of the Standing Automation ("Epic") Committee. The stated reason was that I did not have the knowledge to meaningfully contribute to Respondent's business. This was false.

(r) I was removed from the Standing Automation ("Epic") Committee because of my disability and/or my seeking reasonable accommodations for my disability.

(s) On June 24, 2019, I underwent a cystoscopy to determine if my tumors had resurfaced.

(t) On July 2, 2019, I underwent a second surgery to remove tissue surrounding the areas from which my tumors were removed.

(u) In July 2019, Michael Thomas, Executive Vice President, and a direct report to Glenn, told me that Glenn interviewed a potential candidate, John Appel, to replace me. Thomas told me that Appel was, on multiple occasions, brought into the office and introduced to my direct reports and spoke with my direct reports. Thomas told me that Glenn planned to terminate my employment if he hired Appel.

(v) On August 15, 2019, in an email from Henry Wimberg, Vice President and Treasurer, to all employees, he stated that "[t]here was a discussion at a recent management meeting about employees working from home so [Respondent was] sending this email to review [Respondent's] company policy." He stated the following: Respondent "requires all employees to work from one of [Respondent's] office locations . . . . If you are not able to be in the office due to illness, family matters or other reasons, you will be required to use PTO or an authorized leave of absence for that time out of the office. Exceptions to this policy may be made for certain unusual or unique circumstances but only with Executive Management Team approval in advance of the dates for which you will be out of the office."

(w) On September 20, 2019, Respondent did not give me a performance review, or a salary increase. Nondisabled employees and/or employees who have not sought reasonable accommodations for a disability received performance reviews and salary increases.

(x) Respondent failed to give me a performance review or a salary increase because of my disability and/or my seeking reasonable accommodations for my disability.

(y) On September 23, 2019, in an email to Wimberg, I stated that I was having surgery on October 2, 2019, and did not know whether I would "need to request a work from home accommodation" for October 3 and 4, 2019. I stated that it would depend on how the surgery went. I stated that, per the requirements in Wimberg's August 15, 2019 email, I was "advising [him] of this potential need in advance."

(z) I received no response to my email.

(aa) On October 2, 2019, I underwent another cystoscopy to determine if my tumors had resurfaced.

EEOC Charge of Discrimination
Page 4 of 6
Initials of Charging Party – J.J.

(bb)On October 3, 2019, I called and left a voice message for Glenn, informing him that I would need to work from home that day and the next day, as I was recovering from surgery.

(cc)On October 3, 2019, in an email to Glenn, copying Wimberg, I provided them with my surgeon's note, stating that I needed to work from home that day and the next day, and that I would return to the office on October 7, 2019.

(dd)On October 3, 2019, I called Thomas, Connie Gillen, Receptionist, and Neal Bellinger, Commercial Underwriter, to inform them that I would be working from home that day and the next day.

(ee)On October 3, 2019, in an email from Wimberg, he asked me if I had received approval from Glenn to work from home that day and the next day. He instructed me "not to put 'work from home' on the office calendar."

(ff) On October 3, 2019, in an email to Wimberg, I forwarded him the email I had sent him on September 23, 2019, and reiterated that I had not known in advance whether I would need to work from home that day and the next day. I stated that the "surgeons decided yesterday that they needed to put me under general anesthesia, due to the particulars of my case, prior history and complications." I stated that "I complied to the best of my ability to meet the requirements outlined in [his] 8/15/19 [email] to let management know in advance, by sending my 9/23/19 email to [him]."

(gg)On October 3, 2019, in an email from Wimberg, he stated that he spoke with Glenn, and he approved my working from home that day and the next day. He stated that, "[i]n the future, this will need to be approved prior to the dates [I am] out of the office."

(hh)Kruse and Thomas, both nondisabled employees, regularly worked from home.

(ii) On October 7, 2019, I returned to work at the office.

(jj) On October 9, 2019, I gave to Glenn a self-performance review that I had prepared. Since I had no received a performance review or specific performance feedback, I rated myself and provided examples of why I believed my performance warranted a Meets Job Requirements or Exceeds Job Requirements rating. I received little feedback from Glenn.

(kk)On October 15, 2019, in an email to Wimberg, copying Glenn, I requested time off on November 4, 2019 and November 14, 2019 for medical reasons.

(ll) On October 17, 2019, in a meeting with Glenn, I requested to be reinstated on the Standing Automation ("Epic") Committee. Glenn refused to reinstate me.

(mm)    Respondent refused to reinstate me to the Standing Automation ("Epic") Committee because of my disability and/or my seeking reasonable accommodations for my disability.

(nn)On October 29, 2019, in a meeting with Glenn, I told him that I would be undergoing a medical procedure on November 4, 2019, and that I may need to work from home on November 5, 2019. Glenn approved my work from home request for November 5, 2019.

(oo)On October 30, 2019, in an email to Wimberg, copying Glenn, I stated that there was a possibility that I would need the full day off on November 4, 2019, and stated that I had discussed with Glenn the possibility of working from home on November 5, 2019.

EEOC Charge of Discrimination
Page 5 of 6
Initials of Charging Party – 〉.〈.

(pp) On November 1, 2019, in an email to Wimberg, copying Glenn, I stated that I would need the full day off on November 4, 2019, and stated that I would follow up with them on November 5, 2019 regarding working from home.

(qq) On November 4, 2019, I underwent a biopsy of sixteen (16) sites of my prostate.

(rr) On November 5, 2019, I provided my doctor's note to Wimberg, copying Glenn, stating that I needed to work from home that day and that I would return to work at the office on November 6, 2019.

(ss) On November 6, 2019, I returned to work at the office.

(tt) On November 13, 2019, in a meeting with Wimberg, he told me that I have not communicated my work from home requests properly, and that Glenn did not approve my November 5, 2019 work from home day.  This was false.  Wimberg stated that, because Glenn did not respond in writing to my email, I was out of policy by working from home that day.  Wimberg stated that working from home would only be acceptable, if approved, for a period of two (2) or three (3) consecutive weeks at a time.  Wimberg told me that I would need to use paid time off for any days that I would otherwise request to work from home, following medical procedures.  Wimberg stated that Respondent does not want employees working from home.  I asked Wimberg if there would be further consideration for my situation, as I had a life-threatening illness.  He said no.  When I asked for the opportunity to provide further information that may be helpful, he responded that he was not interested in the details.

(uu) On November 13, 2019, in a meeting with Thomas, following the above meeting with Wimberg, he told me that Glenn still wanted to terminate me, and has been wanting to fire me for months.  Thomas told me that he believed my termination was inevitable, that it would only be a matter of time, and that there was nothing I could do to improve my standing at Respondent.  I stated that the same was upsetting to me, and that it was upsetting to me that Glenn brought in Appel to interview for my position while I was out of work receiving medical treatment.

(vv) On November 14, 2019, I underwent a series of tests and procedures related to my disability.

(ww) On November 19, 2019, I requested, and was approved for, one and a half (1.5) days of paid time off for an appointment with my surgeon on December 12, 2019 and a cystoscopy on January 6, 2019.

(xx) On November 21, 2019, in a meeting with Glenn and Wimberg, Respondent informed me that my employment would be terminated, effective November 22, 2019.  The stated reason was that my job was being eliminated.  I was told that it was not working as Respondent had hoped.  I was told that my work would be spread out to other employees.

(yy) Respondent terminated my employment because of my disability and/or my seeking reasonable accommodations for my disability.

(zz) Before I informed Respondent of my disability and sought reasonable accommodations for my disability, I had no indication that my job was in jeopardy.

(aaa)   I had no performance or disciplinary issues throughout my employment.

(bbb)   I had no option or opportunity to remain employed with Respondents.

EEOC Charge of Discrimination
Page 6 of 6
Initials of Charging Party –

(ccc)   I was Glenn's only direct report terminated effective November 22, 2019.

(ddd)   Respondent retained all of my direct reports when I was terminated.

(eee)   Respondent assigned my job duties and responsibilities to nondisabled employees and/or employees who have not sought reasonable accommodations for a disability.  I was more qualified and experienced to perform my job duties than the nondisabled employees and/or employees who have not sought reasonable accommodations for a disability who were assigned my job duties and responsibilities.

(fff) Respondent's disability discriminatory and retaliatory conduct toward me has caused me emotional distress.

(ggg)   Respondent subjected me to a hostile work environment because of my disability and/or my seeking reasonable accommodations for my disability.

B.   1.   Respondent's Stated Reasons

(a)   Respondent's stated reasons for terminating my employment, that that my job was being eliminated and that it was not working as Respondent had hoped, are pretext for disability discrimination and retaliation for seeking reasonable accommodations for my disability.

(b)   Respondent's stated reason for failing to reasonably accommodate me, that Respondent did not want employees working from home, is pretext for disability discrimination and retaliation for seeking reasonable accommodations for my disability.

(c)   Respondents offered no explanation for subjecting me to a hostile work environment because of my disability and/or my seeking reasonable accommodations for my disability.

(d)   Respondents offered no explanation for failing to remedy or prevent the disability discrimination and retaliation to which I was subjected.

C.   1.   Statutes and Bases for Allegations

I believe that Respondent has discriminated against me based on my disability (including history of and regarded as) and retaliated against me based on my seeking reasonable accommodations for my disability, in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, et seq. ("ADA"), and the New Jersey Law Against Discrimination, as amended, N.J.S.A. § 10:5-1, et seq. ("NJLAD") as set forth herein.

# Exhibit "B"

EEOC Form 161-B (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To:  **John Fitzgerald**<br><br>**Northfield, NJ 08225** | From:  **Philadelphia District Office**<br>**801 Market Street**<br>**Suite 1000**<br>**Philadelphia, PA 19107** |

[ ]  *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **530-2020-01565** | **Legal Unit,**<br>**Legal Technician** | **(267) 589-9700** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge.  It has been issued at your request.  Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court** <u>WITHIN 90 DAYS</u> **of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

[X]  More than 180 days have passed since the filing of this charge.

[ ]  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X]  The EEOC is terminating its processing of this charge.

[ ]  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge.  In this regard, **the paragraph marked below applies to your case:**

[ ]  The EEOC is closing your case.  Therefore, your lawsuit under the ADEA **must be filed in federal or state court** <u>WITHIN 90 DAYS</u> of your receipt of this Notice.  Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ]  The EEOC is continuing its handling of your ADEA case.  However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):**  You already have the right to sue under the EPA (filing an EEOC charge is not required.)  EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred** <u>more than 2 years (3 years)</u> **before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Jamie R. Williamson*

July 28, 2020

Enclosures(s)

**Jamie R. Williamson,**
**District Director**

*(Date Mailed)*